```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA


HEALTH MONITORING SERVICES OF    )
AMERICA, INC.,MEDICAL MARKETING  )
CONSULTANTS, LLC, a Florida      )
limited liability company,       )
MARTIN PRAEGER, and              )
MARK SCHERMER,                   )    Civ. Action No. 06-0018
                                 )
                                 )    Judge Donetta W. Ambrose
              Plaintiffs,        )    Magistrate Judge Caiazza
                                 )
         v.                      )
                                 )
                                 )
CARDIAC TELECOM CORPORATION,     )
a Pennsylvania Corporation,      )
and LEE EHRLICHMAN,              )
                                 )
                                 )
              Defendants.        )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

This matter concerns the October 28, 2004 transfer of business assets. The transaction, which was effected by a series of related contracts, was beset by problems almost immediately. Those problems gave rise to two related lawsuits[1] and an arbitration proceeding. In this, the first of the two actions, the court addresses the Defendants' pending Motion to Dismiss Count IV of the Amended Complaint. The Court recommends that the Motion be denied.

---

[1] The second case, captioned <u>Medical Marketing Consultants, LLC v. Cardiac Telecom Corp.</u>, Civil Action No. 06-0274, is pending. The Motion to Dismiss outstanding in that case is addressed in a separate Report and Recommendation.

## II. REPORT

### A. BACKGROUND

The facts underlying this matter are detailed in the Report and Recommendation (Doc. 20)filed in response to the Plaintiffs' Motion to Enforce Settlement (Doc. 14). An abridged history is sufficient to provide context for the court's recommended disposition of the Motion to Dismiss.

Cardiac Telecom Corporation("CTC") and Health Monitoring Services of America, Inc.("HMSA") were competitors in the home health monitoring industry. On October 28, 2004, the two entered into a series of contracts, including a Purchase Agreement whereby HMSA transferred to CTC medical equipment, software, and existing accounts. At the same time, CTC and Medical Marketing Corporation.("MMC") executed a Sales Representative Agreement obligating the newly formed MMC to market CTC's expanded line of equipment and services, employing a trained sales force that had previously worked on behalf of HMSA.[2] MMC entered into individual brokerage contracts with its sales representatives. These agreements contained non-compete clauses precluding the representatives from working directly for CTC or any other MMC competitor. A third agreement made between the Plaintiffs and CTC, the Security Agreement, was also part of the global asset transfer. As security for its obligations under the other

---

[2]For purposes relevant here, HMSA ceased to do business following execution of the Purchase Agreement.

contracts, CTC granted MMC a lien and security interest in the physical equipment transferred, and agreed to keep the secured assets free from other encumbrances. A specific portion of CTC's revenue was to be placed in a secured bank account. In the event of a default, MMC had the right to demand that its signature be required for all withdrawals and disbursements from this account.

In the Amended Complaint, the Plaintiffs allege four causes of action. In Count I, they contend that CTC breached the terms of the Purchase Agreement when it failed to make required payments pursuant to an established schedule. Count II of the Amended Complaint alleges that CTC breached the Security Agreement when it failed to meet its financial obligations, thereby allowing the transferred assets to be encumbered, and by failing to return the assets in response to the Plaintiffs' demand. In Count III, which is stated as an alternative to Count II, the Plaintiffs allege that CTC "converted" transferred assets when it failed to make payments due under the Purchase Agreement, and failed to return the assets on demand. In Count IV, the Plaintiffs allege that CTC and its President and CEO, Lee Ehrlichman ("Ehrlichman"), engaged in tortious interference with the brokerage agreements made between MMC and its sales staff. The Defendants are alleged to have collected revenues that should have gone to MMC, paid sales commissions directly to the MMC representatives, and solicited these representatives to work for CTC.

The Plaintiffs ask that Count IV of the amended complaint be

dismissed as to Ehrlichman because a corporate officer cannot be held liable for interfering with the corporation's own contracts, and as to both Defendants because the claim for tortious interference impermissibly duplicates a separate contract claim.

### B. THE LAW

#### 1. Tortious Interference with Contract by a Corporate Officer

The Defendants argue that Count IV of the Amended Complaint should be dismissed, citing cases for the proposition that a corporate officer cannot be held liable for interfering with the corporations's own contracts. *See, e.g.*, Michelson v. Exxon Research and Engineering Co., 808 F. 2d 1005, 1007-1008 (3d Cir. 1987)(recognizing as "settled Pennsylvania law" that corporations act only through their officers and agents, and that "a party cannot be liable for tortious interference with a contract to which he is a party"). They say that Count IV violates that rule because it attempts to assert a cause of action against Ehrlichman for interfering with the Sales Agreement, CTC's own contract.

A close reading of the Amended Complaint, however, establishes that the contract with which Ehrlichman is alleged to have interfered is *not* the Sales Representative Agreement made between CTC and MMC. It is instead the broker agreements executed between MMC and the individual members of its sales force. Because CTC was not a party to these broker agreements, Ehrlichman

4

is not alleged to have interfered with a contract made by the corporation of which he is an officer. This argument in support of the Motion to Dismiss lacks merit.

### 2. **The "Gist of the Action" Rule**

The Defendants also contend that Count IV of the Amended Complaint should be dismissed because, in alleging that CTC and Ehrlichman interfered with the contract made between MMC and its sales representatives, the Plaintiffs are attempting to recast as a tort their claim that the Defendants breached the terms of the Sales Representative Agreement with MMC by soliciting MMC employees. This, they say, violates Pennsylvania's "gist of the action" rule.

The gist of the action doctrine distinguishes claims sounding in contract from those sounding in tort by determining from the complaint the source of the duties allegedly breached; if the complaint alleges primarily a breach of duty flowing from an agreement between the parties, the action is contractual in nature, whereas if the duty breached is imposed on members of society as a matter of social policy, the action is tort-based. American Guar. & Liab. Ins. Co. v. Fojanini, 90 F. Supp. 2d 615, 622 (E.D. Pa. 2000).[3] "[C]ourts have held that the doctrine bars

---

[3] This doctrine has yet to be considered by the Pennsylvania Supreme Court. The Pennsylvania Superior Court and several federal courts have, however, predicted that the Supreme Court would adopt the rule. See Retail Brand Alliance, Inc., v. Rockvale Outlet Center,

tort claims: "1) arising solely from a contract between the parties; 2) where the duties allegedly breached were created and grounded in the contract itself; 3) where the liability stems from a contract; or 4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Hart v. Arnold, 884 A.2d 316, 339-40 (Pa. Super. 2005)(citations omitted).

Unfortunately, the line between conduct that is essentially tortious and that which is rooted in the terms of a contract is not always a bright one. This case, where the Defendants' conduct is alleged to have "violat[ed] duties that are imposed by both social policies and agreements[,] requires a more nuanced differentiation than is necessary in [most] case[s]." Chemtech Int'l v. Chemical Injection Technologies, 170 Fed. Appx. 805, 809 n.1 (3d Cir. 2006)(citing eToll,Inc. v. Elias/Savion Adver.,Inc., 811 A.2d 10, 19 (Pa. Super. 2002)).

The mere existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other. Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001). The law does require, however, that the tort claim not be a mere restatement of the contract claim; it must be a separate and independent action

---

LP., Civ. Action No. 06-01857, 2007 WL 403885 at *8 n.8 (E.D. PA. January 31, 2007)(collecting cases).

6

capable of standing alone. <u>Kalumetals, Inc., v. Hitachi Magnetics Corp.</u>, 21 F. Supp. 510 (W.D. Pa 1998). The court is convinced that the tort claim here is sufficiently distinct from the contract claim raised in the related matter to prevent application of the gist of the action rule.

Two sets of contracts are at issue - the contracts between MMC and CTC, the breach of which is alleged in the related matter - and the contracts between MMC and its sales representatives, which are the basis for the tortious interference claims raised here. Although these claims are closely related, they are not interdependent. The tortious interference claim rests on a contractual relationship between the Plaintiffs and third party sales representatives, not on a relationship between the Plaintiffs and the Defendants. *See* <u>Daniel Adams Assoc., Inc., v. Rimbach Publishing Co.</u>, 519 A.2d 997, 1000 (Pa. Super. 1987) (explaining that a claim for tortious interference lies only where the defendant is alleged to have meddled with a contract made between the plaintiff and some third party). In other words, MMC would have a claim for tortious interference with the brokerage agreements even if it had never contracted with CTC.[4]

This is not a case where a plaintiff is trying to disguise a

---

[4]The distinct nature of these claims is especially important here, where the Defendants purportedly terminated the Sales Representative Agreement on the basis of fraud. On the one hand, the Defendants contend that there is no valid agreement. On the other, they argue that the Plaintiffs may not bring a tortious interference claim, because their remedy lies in an action for breach of that same agreement.

contract action as a tort claim. Accordingly, the gist of the action doctrine does not preclude the tort claim made at Count IV of the Amended Complaint; the Motion to Dismiss on the basis of that doctrine should be denied.

### III. CONCLUSION

For the reasons set out above, it is recommended that the Motion to Dismiss Count IV of the Amended Complaint be denied.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b) (1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, Objections to this Report and Recommendation are due by June 15,2007. Responses to Objections are due by June 25, 2007.

May 31, 2007.

/S/ Francis X. Caiazza<br>Francis X. Caiazza<br>U.S. Magistrate Judge

cc:

Counsel of Record
Via electronic mail